# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
## Norfolk Division

| | |
|---|---|
| MICHAEL LANDY, and ) | |
| ) | |
| SUSAN "SHEP" LANDY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No.: _____ |
| ) | |
| RESOURCE BUILDING CORP. ) | JURY TRIAL DEMANDED |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

COMES NOW Plaintiffs Michael Landy and Susan "Shep" Landy (collectively, "Plaintiffs" or "Landys"), by counsel, and brings this action against Resource Building Corporation ("RBC Homes"), and in support of this Complaint hereby allege as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Michael and Shep Landy are natural persons who are citizens of the state of Texas.

2. Defendant RBC Homes is a stock corporation incorporated in Virginia with its principal place of business at 1771 Princess Anne Road, Virginia Beach, VA 23456.

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332 as there is complete diversity of the parties and the amount in controversy exceeds the sum or value of $75,000.

4. This Court has personal jurisdiction over RBC Homes as it is incorporated and maintains its principal place of business within the Commonwealth of Virginia. Moreover, all of

the events that form the basis of the underlying controversy, outlined in this Complaint, took place within the Commonwealth of Virginia.

5. Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 *et seq.* as a substantial part of the events that are the subject of this Complaint occurred, including signature of the Agreement at issue and place of performance of the Agreement, within this judicial district.

## FACTUAL BACKGROUND

### A. The Agreement

6. RBC Homes is in the business of residential home construction and renovation, especially the construction of coastal and waterfront properties. The Landys sought out RBC Homes to construct and develop their property located at 324 Teal Crescent, Virginia Beach, VA 23456 (the "Property").

7. To formalize the arrangement, on July 3, 2018, the Landys and RBC Homes entered into a Contractor Agreement ("Agreement", attached hereto as **Exhibit A**) for RBC Homes to construct a Bulkhead, Wharf, Boat Ramp and Boat Lift at the Property (collectively, the "Project").

8. Article 1 of the Agreement obligated RBC Homes to "furnish all materials and perform all of the work shown on the attached Estimate and described in the attached 'JPA [Joint Permit Application] for Mr. Mrs. Michael Landy'" in exchange for a sum of monies totaling $110,750.00. *See* Agreement, Ex. A at Art. 1-3.

9. The Estimate, attached to the Agreement, called for RBC Homes to construct: a Boat House Demo; Installation of a Bulkhead (per the JPA) in treated material; Wharf decking in treated material; a Boat Lift; and a Concrete Ramp. *See* Agreement, Ex. A, Estimate.

10. The JPA outlined drawings for the Project that detail the waterfront improvements that were contracted to be built by RBC Homes.

11. Article 2 of the Agreement called for a 20% up front advance on the Project cost ($22,500) and dictated that further payment shall be summited in bi-weekly progress payments for completed work. *See* Agreement, Ex. A at Art. 3.

12. Furthermore, Article 2 of the Agreement stated work shall begin on the Project on or before July 9, 2018, to be completed before September 15, 2018. The Agreement also stated that "[t]ime is of the essence." *See* Agreement, Ex. A at Art. 2.

13. Article 5 of the Agreement required, "Any alteration or deviation from the above specifications, including but not limited to any such alteration or deviations involving additional material and/or labor costs, will be executed only upon a written order for the same, signed by Owner and Contractor." *See* Agreement, Ex. A at Art. 5.

14. Moreover, Article 5 of the Agreement provided that RBC Homes would obtain all necessary permits to complete the work "at its own expense" and RBC Homes would "remain responsible for the proper completion of this Contract." *See* Agreement, Ex. A at Art. 5 Sec. 4, 7.

**B. RBC Homes' Failure to Complete the Work**

15. On May 10, 2018, the Landys paid RBC Homes an advance of $10,000 on May 10, 2018, to begin work on the bulkhead.

16. Shortly after execution of the Agreement, on July 3, 2018, the Landys provided another advance to RBC Homes of $25,000.

17. By December 1, 2018, RBC Homes had not started any work on the Bulkhead despite the Agreement stating time is of the essence and requiring a completion date of September 18, 2018. *See* Agreement, Ex. A at Art. 2.

18. Sometime after December 1, 2018, RBC Homes began working on the Bulkhead but never completed full scope of work outlined by Article 1 of the Agreement.

19. RBC Homes provided numerous written and oral communications to the Landys stating the work was near completion, and requiring further advance payments under the Agreement.

20. Upon RBC Homes' false reports, the Landys believed work was progressing and nearing completion. As a result, the Landys made all of the payments requested by RBC Homes, including advancing progress payments of $70,000 in January of 2019 and $4,100 in April of 2019.

21. The Landys continually requested updates from RBC Homes as to the status and completion date of the work. In response, RBC Homes made continual false representations that the Project was nearly finished.

22. Upon further investigation of the worksite on or about April of 2019, the Landys discovered construction on the Project had barely begun, and that the worksite was littered with abandoned materials and debris. *See* Agreement, Ex. A at Art. 5 Sec. 8 (noting Contractor's obligation to "remove all debris and leave the premises in broom clean condition.").

23. At this time, the Landys realized RBC Homes had grossly misrepresented the work that it had completed and had hardly applied any of their advanced funds to completion of the Project.

24. On or about July 2020, RBC Homes provided the Landys with an alleged accounting of charges regarding the Project ("Accounting"). This Accounting contained numerous frivolous charges that violated the Agreement, unlawfully exceeded the agreed upon scope of work, or otherwise lacked due substantiation that the charged work had been performed or that responsibility to pay for that work lay with the Landys.

25. Moreover, in this Accounting, RBC Homes assessed permit costs against the Landys in violation of Article 5 Section 7 of the Agreement. *See* Agreement, Ex. A at Art. 5 Sec. 7.

26. Realizing RBC Homes had no intention of completing the Project for the Agreement price, the Landys made numerous oral and written requests to RBC Homes seeking the return of unearned advances. RBC Homes has refused to return unearned monies paid by the Landys for contractual work that was not completed.

27. As of the date of this Complaint, RBC Homes has failed to complete any more of the required Estimate work and has failed to return unearned advances.

## COUNT I
### (Breach of Contract)

28. The Landys incorporate the foregoing paragraphs of the Complaint as if fully set forth herein.

29. Under Virginia Law, the elements of a breach of contract claim are "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Young-Allen v. Bank of Am., N.A.*, 839 S.E.2d 897 (Va. 2020).

30. The Agreement between the Landys and RBC is a valid and binding contract.

31. Pursuant to Article 1 of the Agreement, RBC Homes as Contractor was obligated to perform all the work as described in Agreement and the incorporated Estimate and JPA.

32. Any work that was not listed in the Estimate or JPA, was prohibited to be charged to the Landys without first amending the scope of the work in writing and obtaining the written permission of the Landys to charge and complete such work. *See* Agreement, Ex. A at Art. 5.

33. RBC Homes never submitted an amended Estimate or JPA, never sought the Landys' written approval to an amendment of the scope of work to be performed, and never obtained written permission of the Landys to amend the scope of work or to charge for work not otherwise listed in the Estimate or JPA.

34. The Landys fully performed all terms, conditions and promises required of them including making full requested payments under the Agreement.

35. RBC Homes breached the Agreement when it failed to complete construction of the Bulkhead, Wharf, Ramp and Lift in accordance with the timing of the Agreement or within a reasonable time.

36. Furthermore, RBC Homes breached the Agreement by assessing excessive charges and costs to the Landys that fell outside the scope of the Agreement, including but not limited to, permit costs, unspecified "monthly site supervision" charges, and vague "overhead expenses."

37. As a direct and proximate result of RBC Homes continual breach of the Agreement, the Landys have been damaged in an amount to be shown according to proof at trial, not limited to cost to complete the Project, return of advances for uncompleted work, necessary expenses incurred, lose of time, and other actual losses, which in total collectively exceed $75,000.

38. Moreover, Article 6 of the Agreement entitles the Landys to losses and expenses including attorneys' fees "resulting from . . . a breach of this agreement by, the contractor." As such, the Landys seek reimbursement for all litigation expenses and actual attorneys' fees expended in this matter.

### COUNT II
**(Unjust Enrichment)**

39. The Landys incorporate the foregoing paragraphs of the Complaint as if fully set forth herein.

40. The second cause of action is pled in the alternative, should the Court determine that there is not an enforceable contract between the parties for any portion of the monies paid to RBC Homes by the Landys.

41. Under Virginia law, the elements of unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant was aware of that benefit, and (3) it would be unjust under the circumstances to allow defendant to retain the benefit. *Microstrategy, Inc. v. Netsolve, Inc.,* 368 F. Supp. 2d 533, 537 (E.D. Va. 2005).

42. The Landys conferred a benefit upon RBC Homes by providing payment advance on a waterfront construction contract, knowing that the Landys expected performance of the work as a result.

43. RBC Homes knew that the Landys conferred this benefit upon RBC Homes, and accepted the advances, knowing that the Landys expected completion of the Project in exchange for the advances.

44. RBC Homes has received and retained the benefit of the advances paid by the Landys without completing the Project.

45. RBC Homes' failure to reimburse the Landys for the portion of unearned advances has resulted in an inequity to the Landys, and the unjust enrichment of RBC Homes.

## COUNT III
**(Violation of Section 59.1-200(A)(57) of the Virginia Consumer Protection Act)**

46. The Landys incorporate the foregoing paragraphs of the Complaint as if fully set forth herein.

47. Under Section 59.1-200(A)(57) of the Virginia Consumer Protection Act ("VCPA"), it is unlawful to obtain an advance of money "with fraudulent intent, upon a promise

to perform construction, removal, repair or improvement" to real property and to "fail to perform such promise, and also fail to make good such advance," in violation of Code § 18.2-200.1.

48. The VCPA establishes an independent duty for RBC Homes to not fraudulently obtain advance of funds for construction that it fails to perform, that exists independent of the duties required by the Agreement. *See Abi-Najm v. Concord Condo. LLC,* 699 S.E.2d 483, 489 (Va. 2010).

49. RBC Homes is a supplier as defined by the VCPA because it is a professional who advertises, solicits, and engages in consumer transactions, namely the construction and repair of real property, including in this case for the Landys.

50. The Agreement between the Landys and RBC Homes is a consumer transaction because the construction of the Bulkhead, Wharf, Ramp and Lift for the Property and involved RBC Homes providing goods and services to be used primarily for the Landys' personal, family, or household purposes, namely the Property which is for their personal use on family vacation property.

51. RBC Homes obtained several advances from the Landys on: May 10, 2018; July 5, 2018; September 18, 2018; January 29, 2019; April 17, 2019 to perform construction and improvements to the Property.

52. Upon inspection of the Project, on or around September of 2019, the Landys discovered that RBC Homes misrepresented the amount of work completed on payment applications to induce further advances under the Agreement.

53. RBC Homes' obtained advances from the Landys in the value of approximately $109,100. RBC Homes acted with the fraudulent intent not to perform the full scope of

construction work promised and have failed to return such requested unearned advances within 15 days of the Landys' requests.

54. The Landys have made continual requests after discovery of the uncompleted work for return of unearned advances.

55. RBC Homes willfully obtained the advances from the Landys on at least four mentioned occasions and repeatedly refused the Landys requests return advances damaging the Landys, for a total of $109,100.

56. Under the VCPA, the Landys are entitled to recover actual damages for RBC Homes' statutory violations. *See* Va. Code § 59.1-204.

57. For willfully violating the VCPA under Virginia Code § 59.1-204(A), RBC Homes is liable for three times the actual damages which entitles the Landys to damages totaling $327,300.

58. Moreover, under Virginia Code § 59.1-204, RBC Homes is liable for attorney's fees and costs in relation to its VCPA violations.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Landys respectfully request that this Honorable Court:

i. Enter Judgment in favor of the Landys on Count I and Count III set forth within this Complaint.

ii. In the alternative, enter Judgment in favor of the Landys on Count II and Count III set forth within this Complaint.

iii. On Count I, award the Landys damages including, but not limited to, actual, expectation and consequential damages in an amount to be determined at trial against RBC Homes, in excess of $75,000.

iv. On Count II, in the alternative, if the Court deems there is no valid written contract between the Landys and RBC Homes, award the Landys an amount to be proved at trial for the value that RBC Homes was unjustly enriched.

v. On Count III, award the Landys damages including, but not limited to, actual and statutory VCPA damages in the amount of $109,100. If the Court finds that the VCPA violation was willful, then award treble damages in the amount of $327,300.

vi. Award the Landys pre- and post-judgment interest on any Judgment awarded by this Court.

vii. Award the Landys their expenses and attorneys' fees as warranted by both the Agreement and the VCPA.

viii. Award the Landys such further damages and equitable relief as this Court deems is just and proper.

ix. The Landys hereby demand a trial by jury on the claims set forth herein.

Respectfully Submitted,

**Dated: December 17, 2020**         **Michael Landy and Susan "Shep" Landy**
*By Counsel*

               /s/
Brandan M. Goodwin, Esquire (VSB No. 94766)
John M. Kaptan, Esquire (VSB No. 94830)
HANGER & ASSOCIATES, P.C.
618 Village Dr. Ste J,
Virginia Beach, Virginia 23454
Phone: (757) 351-1510
Fax: (757) 229-5900
Email: BGoodwin@hangerlaw.com
Email: JohnKaptan@hangerlaw.com
*Attorneys for Michael and Shep Landy (Plaintiffs)*